Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
dgerrard@gerrard-cox.com
Nathan R. Henderson, Esq.
Nevada Bar No. 13145
nhenderson@gerrard-cox.com
GERRARD COX LARSEN
2450 Saint Rose Parkway, Suite 200
Henderson, Nevada 89074
(702) 796-4000
*Attorneys for Creditor*,
WOODS & ERICKSON, LLP

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In Re: | Case No. BK-S-19-17282-btb |
|---|---|
| ANDREW BUNKER PLATT and RUTH ANN PLATT | Adversary Proceeding: |
| Debtor(s). | Chapter 7 |
| WOODS & ERICKSON, LLP, a Nevada Limited Liability Partnership, d/b/a WOODS ERICKSON & WHITAKER, LLP, | |
| Plaintiff, | |
| vs. | |
| ANDREW B. PLATT, an individual, | |
| Defendant. | |

**ADVERSARY COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR**

COMES NOW Creditor WOODS & ERICKSON, LLP d/b/a WOODS ERICKSON & WHITAKER, LLP ( "Firm") in the above-referenced bankruptcy case, by and through its counsel of record, the law firm of GERRARD COX LARSEN, and for its Complaint against the Debtor ANDREW BUNKER PLATT ("Platt"), alleges and avers as follows:

**PARTIES**

1. Plaintiff, the Firm, is a Nevada limited liability partnership with its principal place of business in Clark County, Nevada.

2. Defendant, Andrew B. Platt ("Platt") is a resident of Clark County, Nevada.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and pursuant to one or any combination of the following: 11 U.S.C. §§ 341, 521, 523 and 727, Bankruptcy Rule 7001 and Local Rule 7007.1, Local Rules of Practice, United States District Court, District of Nevada. Plaintiff believes and alleges that the claims for relief are "core" proceedings subject to determination by this Court pursuant to 28 U.S.C. § 157(b)(2). In the event any claim for relief is not a core proceeding, Plaintiff hereby consents to determination of these claims by this Court.

4. Venue is proper in this District.

## GENERAL ALLEGATIONS

5. The Firm is a Nevada limited liability partnership which has been operating as a law firm in Clark County, Nevada since December 31, 1997.

6. The Firm is engaged in the general practice of law but focused primarily on all aspects of business law, estate planning, succession planning, and asset protection planning, including the formation and maintenance of corporations, limited liability companies, all forms of partnerships and trusts. Firm attorneys often act as trustee on trusts set up or administered by the Firm, with all trustee or administration fees belonging to the Firm.

7. Platt was hired by the Firm as an associate attorney in or about August of 2007.

8. From 2012 to 2015, while still an associate at the Firm, Platt provided legal services to a charter school known as Renaissance Academy (the "Academy"), on whose board Platt simultaneously served and for whom Platt ultimately served as a wind-up trustee.

9. Rather than bill his legal work for the Academy through the Firm, Platt collected fees for his legal services outside of the Firm by using his position on the Academy's board and as wind-up trustee to pay himself legal fees. Platt concealed his actions from the Firm and never informed the Firm that he was collecting money for legal services from the Academy and retaining this money rather than remitting it to the Firm.

10. By 2016, Platt had become a limited partner in the Firm and was being paid with partnership distributions rather than wages. As a limited partner of the Firm, Platt met with

prospective clients of the Firm and established client relationships with such prospective clients. He provided legal services to Firm clients, typically regarding: the formation and governance of businesses; the formation, maintenance and administration of trusts and other entities; business consulting; and providing services as outside corporate counsel for Firm clients. Plat was paid based upon a percentage of the revenue he generated through billing the Firm's clients. As a limited partner of the Firm, Plat owed a fiduciary duty to the Firm to carry out his duties as a limited partner, develop clients and client relationships for the Firm, and remit all money to the Firm generated by Firm clients or potential Firm clients through providing legal services, trustee services, entity management or administrative services and any other income producing opportunities in any manner related to the Firm's practice.

11. Platt enjoyed all the benefits of his limited partnership with the Firm, including his limited partner distributions based upon a percentage of his collections, access to the Firm's clients, name, reputation, data and form bases, resources, staff and good will.

12. On or about October, 2017, while Platt was working as a limited partner at the Firm, Platt secretly created a competing law firm by the name of L&S Counselors, Ltd. ("L&S"). The Managing Partners of the Firm were not aware of this competing law firm and did not approve the creation or activity of L&S. Platt actively concealed the existence of L&S from the Managing Partners of the Firm.

13. While continuing as a limited partner with the Firm, Platt met with prospective clients of the Firm (often at the Firm) and then solicited these prospective Firm clients to become clients of L&S. In this manner, Platt secretly diverted clients and revenue away from the Firm and into his own business which was directly competing with the Firm, all while continuing to work at the Firm. Platt also formed attorney-client relationships with existing clients of, or referral sources to, the Firm and then convinced these existing clients and/or referral sources to begin using his competing law firm, in direct competition to the Firm and while he was working for the Firm. Platt concealed all of his actions from the Managing Partners of the Firm.

14. While continuing as a limited partner with the Firm and continuing to owe fiduciary duties and a duty of loyalty to the Firm, Platt secretly provided legal services to L&S clients, using

the office space, staff and resources of the Firm, but billing for these services through L&S without the knowledge or consent of the Firm and without remitting the revenue generated by such client relationships to the Firm.

15. While continuing as a limited partner of the Firm, Platt provided legal services to Firm clients who believed they were receiving legal services from the Firm, but then sent bills for such legal services from his competing business L&S. Platt secretly began billing these clients for services provided by the Firm by generating invoices from his competing law firm, L&S, and sending these invoices to Firm clients to have them pay for the services to L&S rather than the Firm. To conceal his actions, Platt deleted his time and billing entries on the Firm server so that these clients would not be billed by the Firm for these same services which would ultimately result in the Managing Partners of the Firm learning of his fraudulent actions.

16. On or about March 13, 2018, during the time that Platt was secretly taking actions to defraud his partners in the Firm, one of the Firm's Managing Partners, Glen Woods ("Glen") became incapacitated and was admitted to the hospital in Phoenix, Arizona with both leukemia and pneumonia. Upon information and belief, Glen lacked legal capacity to sign any legal documents from the date he was admitted to the hospital.

17. On or about March 16, 2018, Glen was placed into a medically induced coma from which he was never revived.

18. On or about April 1, 2018, Glen passed away without having ever regained consciousness from his coma. The time period of March 13, 2018 to April 1, 2018 is hereinafter referred to as the "Incapacity Period". The time period of March 16, 2018 to April 1, 2018 is hereinafter referred to as the "Coma Period".

19. Prior to his death, Glen had served as trustee for several trusts established or administered by the Firm ("Client Trusts") and provided management or administrative services to several entities established or serviced by the Firm ("Client Entities").

20. In an effort to direct all future work from these Client Trusts and Client Entities away from the Firm and to Andrew and Glen's son Kent Woods ("Kent"), who was also a limited partner at the Firm, Platt prepared documentation and purported to obtain signatures from Glen during the Incapacity Period, while Glen was certainly legally incapacitated, and even during the

Coma Period when Glen was in a coma from which he never recovered. Platt was aware that these documents ("Fraudulent Documents") were both illegal (void) and that he was breaching his fiduciary duties and duties of loyalty to the Firm in taking these actions. Platt hid his actions from the Managing Partners of the Firm and never obtained the Firm's consent for his actions. All of these actions were taken while Platt was working at the Firm as a limited partner of the Firm and all of these actions were fraudulently concealed from the Managing Partners of the Firm.

21. Following Glen's death, the Managing Partners asked Platt to render true and full information of all actions he had taken to direct the work for these Client Trusts and Client Entities away from the Firm. Platt refused to disclose this information to the Managing Partners and fraudulently concealed his actions and knowledge of the Fraudulent Documents he had prepared and caused to be sent to third-party lenders and Firm clients.

22. Following Glen's death, the Managing Partners were told by Kent Woods that Platt had collected money outside the Firm from the Academy. The Managing Partners then confronted Platt and asked if he had ever collected any money for legal services outside of the Firm. Platt fraudulently misrepresented that the only money he had ever received outside of the Firm was $2,500.00 from the Academy and that he had never received any other money outside the Firm. Platt knew this representation was false because he had actually received more than $30,000.00 from the Academy and had received more than $130,000.00 from work diverted to L&S.

23. Managing Partner, Brian Whitaker, further asked Platt whether he was improperly and secretly contacting Firm clients and attempting to persuade these clients to move their files and business away from the Firm while he was still working as a limited partner at the Firm. Platt fraudulently misrepresented to Mr. Whitaker that he was not engaging in such activities.

24. Late in the night of April 19, 2018 or early in the morning on April 20, 2018, Platt attempted to conceal his fraudulent actions and breaches of fiduciary duty by deleting records of his activities from the Firm's servers. Platt intended to cover his tracks and hide his fraudulent activities by deleting records from the Firm's server. At the same time, Platt also copied hundreds of legal forms belonging to the Firm as he was planning to leave the Firm and continue with his competing law firm, L&S, and he needed the Firm's legal forms in order to provide the same types

of legal services he had been secretly providing to L&S clients by using Firm property while he was working at the Firm.

25. On or about April 20, 2018, Managing Partner Brian Whitaker learned that Platt was deleting Firm files from the Firm server to conceal his fraudulent actions. When Platt was confronted about deleting Firm files, Platt initially denied he had deleted records and then admitted that he had deleted "only his personal files" which was a fraudulent misrepresentation. Platt then resigned and was escorted from the Firm premises.

26. When the deleted files were recovered from back-ups, the Firm learned that Platt had deleted all of his time entered in the Firm's billing program for the preceding month. The Firm then learned from the Firm clients for whom this work had been performed that Platt had sent bills for these services through L&S.

27. When reviewing the recovered files, the Firm learned about L&S and learned that Platt had secretly been diverting Firm clients and revenue to his own competing Firm for at least eight months prior to his departure from the Firm. The Firm also learned that Platt had lied about the amount of money he had received from the Academy, none of which was ever approved by the Firm.

28. After learning this information, Managing Partner, Brian Whitaker, contacted Platt and asked whether Platt had deleted his time entries from the Firm server, or otherwise failed to record them, Platt attempted to fraudulently conceal his actions from the Firm and refused to provide the information being sought by the Firm.

29. While continuing as a limited partner with the Firm, Platt used the Firm resources, including Firm letter head, equipment and postage to further the conspiracy and encourage Firm clients to L&S.

30. On April 26, 2018, after he was no longer working for the Firm and with no legal authority to act on behalf of the Firm, Platt executed a Commercial Registered Agent Registration Statement of Change Form, under penalty of perjury, and filed the same with the Nevada Secretary of State to change the registered agent address, email and "individual with authority" information for all entities for whom Glen Woods was the Nevada registered agent. This Form identified Andrew M. Platt as the new individual with authority to act on behalf of Glen Woods as the

registered agent on all Firm Clients using Glen Woods as their registered agent, and listed Platt's new firm email address and a physical address for associates of Platt as the address for service. As a result, Platt changed the resident agent information for dozens of Firm clients without the knowledge or consent of the Firm's Managing Partners and without the consent of the clients.

31. Following his departure from the Firm, Platt used his access codes to access the Firm website from which Platt made copies of copyrighted or proprietary property (photographs) belonging to the Firm and used these materials to create his own firm website. On his L&S website, Platt included the Firm's picture and biographical information from Glen Woods to make it appear that Glen was a partner or in some manner associated with L&S.

### FIRST CLAIM FOR RELIEF

### (Objection to Discharge - 11 U.S.C. § 523(a)(2)(A))

32. The Firm repeats and realleges the allegations set forth in Paragraphs 1 through 31 of this Adversary Complaint and incorporates the same by this reference as if more fully set forth herein.

33. Platt obtained money and property belonging to the Firm through false pretenses, false representations, breach of his fiduciary duties and actual fraud.

34. Platt fraudulently diverted both revenue and clients from the Firm to himself and his entity, L&S. Platt also fraudulently converted and used the Firm's legal forms, office space, staff time, supplies, office equipment, internet and other resources of the Firm, including the Firm's good-will and reputation, to divert revenue and clients from the Firm to himself.

35. In an effort to conceal his fraudulent activities, Platt refused to render on demand true and full information of all things affecting the Firm of which he was a limited partner and specifically refused to answer questions or made outright misrepresentations regarding whether he ever taken any revenue for legal services outside the Firm or was billing Firm clients from his new firm.

36. Platt made his misrepresentations with knowledge that his statements were false and with the intent to cause the Firm to rely upon the same and refrain from impeding his activities or seeking judicial relief for the damages he was inflicting.

37.     The Firm relied upon Platt's misrepresentations to its detriment and in doing so was unable to stop him from engaging in the activities outlined above.

38.     Pursuant to 11 U.S.C. § 523(a)(2)(A), the discharge of Platt should be denied.

## SECOND CLAIM FOR RELIEF

### (Objection to Discharge - 11 U.S.C. § 523(a)(4))

39.     The Firm repeats and realleges the allegations set forth in Paragraphs 1 through 38 of this Adversary Complaint and incorporates the same by this reference as if more fully set forth herein.

40.     The Firm repeats and re-alleges the preceding paragraphs as though set forth fully herein and incorporates the same by reference.

41.     NRS 87.210 and NRS 87.4336 create a statutory fiduciary duty between every partner of a partnership and his or her fellow partners and the partnership itself.  Platt was required to account to the Firm and hold in constructive trust for the Firm's benefit, any profits derived by him without the consent of the Managing Partners and connected in any manner to the conduct of the Firm's business.

42.     Alternatively, whether Platt was acting as an employee of the Firm rather than as a limited partner, or as a limited partner, Platt still owed a fiduciary duty to the Firm which included the duty of loyalty and utmost good faith, and was required to refrain from acting for his own private gain to the detriment of the Firm.

43.     Whether as an employee or as a limited partner, Platt was barred from usurping opportunities that belong to or could have been exploited by the Firm.  Platt's actions described herein constituted a usurpation of opportunities belonging to the Firm and a breach of Platt's fiduciary duty to the Firm.

44.     Platt further breached his fiduciary duties to the Firm and the other partners within the Firm by competing with the Firm, engaging in self-dealing, concealing information from the Managing Partners of the Firm, retaining and converting revenues that were the rightful property of the Firm, destroying Firm property, using Firm property and resources for his personal gain, engaging in fraudulent behavior that was harmful to the Firm and Firm clients while presenting

himself as an agent and representative of the Firm, and engaging in a conspiracy to defraud the Firm.

45. Platt also made false and fraudulent statements while acting in a fiduciary capacity by denying that he had deleted data on the Firm server and denying that he was engaged in contacting and attempting to persuade clients to move away from the Firm.

46. Platt also created and disseminated the Fraudulent Documents in violation of his fiduciary duties owed to the Firm.

47. Platt deleted files and billing records from the Firm with the intent of concealing from the Firm and preventing the Firm from becoming aware of, his fraudulent activities, his fraudulent misrepresentations and the conspiracy in which he was involved, all of which violated his fiduciary duties owed to the Firm.

48. All of Platt's actions described herein constituted fraud while acting in a fiduciary capacity as an employee or limited partner of the Firm.

49. Pursuant to 11 U.S.C. § 523(a)(4), the discharge of Platt should be denied as it relates to this creditor.

WHEREFORE, the Trustee prays for relief as follows:

1. That an Order be entered denying discharge of all debts and liabilities owed to the Firm by Platt; and

2. That the Firm be awarded such other and further relief as the Court deems appropriate in the premises.

DATED this 27th day of December, 2019.

**GERRARD COX LARSEN**

*/s/ Douglas D. Gerrard, Esq.*
Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
Nathan R. Henderson, Esq.
Nevada Bar No. 13145
2450 Saint Rose Parkway, Suite 200
Henderson, Nevada  89074
*Attorneys for Creditor,*
*Woods & Erickson, LLP*